IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER NOWLIN, | ) | Civil Action No.: 4:16-CV-00371-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TERMINIX SERVICE, INC., JOHN | ) | |
| STROMAN, and LARRY PARKER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Christopher Nowlin ("Plaintiff") filed this action on February 7, 2016, seeking recovery against former employer Defendant Terminix Service, Inc. ("Terminix"), and against former co-workers Defendants John Stroman and Larry Parker. The Complaint asserts that, during his employment with Terminix, Plaintiff complained to his supervisor that he believed he was being subjected to race discrimination. [ECF #1, p. 2]. Within the Complaint, Counts One, Two, and Three allege that Plaintiff was subject to disparate discipline/race discrimination, retaliation and wrongful termination by Terminix in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. and/or in violation of 42 U.S.C. § 1981. [ECF #1, pp. 14-17]. Plaintiff also alleges in Count Ten that Terminix violated 29 U.S.C. § 201, the Fair Labor Standards Act (the "FLSA"). [ECF #1, p. 23]. Plaintiff alleges in Count Six that Terminix engaged in negligent supervision of its employees. [ECF #1, p. 19]. Plaintiff further alleges in Counts Four and Seven that all Defendants made false and slanderous statements about him and were engaged in a civil conspiracy. [ECF #1, p. 18, 20]. Plaintiff alleges in Counts Five and Eight that Defendants Stroman and Parker engaged in third party interference with a contract. [ECF #1, p. 18]. Plaintiff also brings a claim for

intentional infliction of emotional distress against what appears to be all Defendants. [ECF #1, p. 22].

Discovery ended on February 3, 2017. On March 3, 2017, Defendants filed a motion for summary judgment. [ECF #34]. On April 7, 2017, Plaintiff filed his response in opposition to Defendant's motion. [ECF #40]. Defendants filed their reply in support of their motion on April 14, 2017. [ECF #41]. In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a Magistrate Judge for pretrial handling. This matter is now before the Court after issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III. [ECF #52]. In the R&R, the Magistrate Judge recommends granting the motion for summary judgment in its entirety. This matter is now before the Court for review. Plaintiff filed his objections to the R&R on February 13, 2018. [ECF #55]. Defendants replied to these objections on February 26, 2018. [ECF #57].

## Standards of Review

### I. Review of the Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The district court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In this case, Defendants bear the "initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendants carry this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

**Factual Background and Procedural History**

The facts of this case, including the citations to the record, are adequately set forth in the Magistrate Judge's R&R. [ECF #52, pp. 2-14]. Briefly stated, Plaintiff was hired by Larry Parker, the branch manager for Defendant Terminix's Florence branch, as a full-time employee on January 16, 2012. Defendant Parker testified that Plaintiff was hired to perform "moisture work" which consisted of encapsulations, moisture barriers, sump pumps, and insulation work.[1] Prior to this date, Plaintiff had performed work with one of Terminix's contractors; thus, Defendant Parker was familiar with Plaintiff's work. Plaintiff asserts he was hired as a carpenter, and Defendant Parker testified that this title was listed on his employee form.[2] However, Defendant Parker explained that Plaintiff was given that listing on his new employee form because while Plaintiff lacked the formal training or experience to be considered for that role, Terminix did not have an official position titled "Carpenter's Assistant."[3] In fact, Plaintiff testified that he was hired on as a carpenter with "no job title" but instead for the duties that go under the "Carpenter" title.[4] Nonetheless, the parties agree that the job duties for either position, regardless of title, were substantially the same.

According to Plaintiff, sometime in 2013, another employee, Jimmy Hewitt, stated something like "we put people like you in a septic tank" or "people like you we kill them and

---

[1] Parker Dep. 11:16-22 (November 3, 2016) [ECF# 34-4].

[2] Parker Dep. 11:24 [ECF# 34-4].

[3] Parker Dep. 50:15; 51:1-25; 52:1-3 [ECF# 34-4].

[4] Nowlin Dep. 54:5-19 (September 30, 2016) [ECF# 34-2].

put them in the septic tanks" and directed the comment at Plaintiff while working together.[5]

Plaintiff testified that on that day, Mr. Hewitt had been saying "crazy" stuff prior to the comment.[6] Plaintiff further testified that no one had ever used a racial or derogatory term toward him while he was employed at Terminix.[7] Afterward, he testified that he told Defendant Parker about this comment, that he did not work with Mr. Hewitt anymore unless they "had to," and that Mr. Parker pulled him off that job site for a while to do other tasks.[8] Plaintiff testified that Mr. Hewitt never made a racial comment toward him or any other employees.

Thereafter, Plaintiff states that in October of 2014, Plaintiff complained to Larry Parker that he made less money than two other employees, Jimmy Hewitt and John Teal, and that he was doing additional work that these two individuals were not doing. In a daily report journal that he kept, Plaintiff indicated that he met with Defendant Parker, Defendant Stroman, and Parker's supervisor, as well as spoke to an individual in human resources about this issue regarding pay. Plaintiff indicated that he felt the difference in pay was based on race. Defendant Terminix, on the other hand, states that the difference in pay was a result of the difference in training, experience, job duties and time with the company. Specifically, Mr. Hewitt had been hired with the company in 1998, while Plaintiff had been hired in 2012.[9] Mr. Hewitt also had specialized

---

[5] Nowlin Dep: 110:10-16; 59:10-13 [ECF# 34-2].

[6] Nowlin Dep: 59:10-25 [ECF# 34-2].

[7] Nowlin Dep: 59:2-10 [ECF# 34-2].

[8] Nowlin Dep. 61:1-20 [ECF# 34-2].

[9] Thoesen Dep: 64:1-15 [ECF# 34-7].

training as a carpenter that Plaintiff did not have.[10] Mr. Teal had also been employed with the company as a carpenter, but he was out on workers' compensation in 2014.[11] In the course of this discussion, Defendant Parker informed Plaintiff that he had actually been hired as a carpenter's assistant, and that he was unable to increase Plaintiff's pay because the work that he had been performing was decreasing. Plaintiff testified that he did not have any knowledge of Hewitt and Teal's qualifications prior to making this complaint, and he further acknowledged that he had been doing less encapsulation work and more re-inspections because there was not as much encapsulation work to be performed.[12] Plaintiff testified that he did not have any knowledge on the basis for the difference in pay other than the fact that he knew they were being paid different hourly rates.[13] Defendant Parker further testified that based on the amount of moisture work at the time Plaintiff asked for a raise, it was not something the company could justify. Instead, they discussed incentive pay to give him the opportunity to earn more money.[14]

On October 17, 2014, three days after Plaintiff's initial complaint about his pay, Defendant Parker informed Plaintiff that his position was being dissolved, and that the company planned to move him into a keyman position. According to the testimony of Human Resources manager Ms. Christina Thoesen, John Teal was also a carpenter who worked at the same time as Plaintiff, and

---

[10] Parker Dep. 51:7-13 [ECF# 34-4].

[11] Parker Dep. 29:13-19 [ECF# 34-4].

[12] Nowlin Dep: 96:21-25 [ECF# 34-2].

[13] Nowlin Dep. 97:2-8 [ECF# 34-2].

[14] Parker Dep. 35:12-25 [ECF# 34-4].

he was also offered a keyman position once he returned from workers' compensation leave.[15]  On October 20, 2014, Plaintiff and Defendant Parker met to discuss the keyman position and the training that would be required in order to obtain this position. Plaintiff was to begin his training in December of 2014, however during that month, he was scheduled to take off work for vacation.[16]  Plaintiff alleges that right around this time period Defendant Terminix gave him a higher quota one month than other employees.  Defendant Parker explained that he initially gave Plaintiff a higher quota because there was little moisture work to be done during that particular month, and he felt Plaintiff would have additional time to complete these jobs. However, once Plaintiff let him know the quota was too high, Defendant Parker testified he reduced his quota. When asked why Jimmy Hewitt did not have the same quota, Defendant Parker explained that Mr. Hewitt was a full-time carpenter, so his quota changed based on his amount of "down time".[17]

When he returned from vacation, Plaintiff signed a document changing his position from hourly to incentive pay (under the "Keyman" position). At some point after the new year, Plaintiff testified that he became curious as to how he could perform the work as a "Keyman," even though he did not complete his training.[18] Therefore, he requested paperwork related to his training from Human Resources via e-mail on January 21, 2015.[19] That e-mail was forwarded by Human

---

[15]Thoesen Dep. 64:22-25 [ECF# 34-7].

[16]Parker Dep. 180:19-25 [ECF# 34-4].

[17]Parker Dep. 25-26 [ECF# 34-4].

[18]Parker Dep. 181-182 [ECF# 34-4].

[19]Parker Dep. 184:9-22 [ECF# 34-4].

Resources to Defendant Parker. Defendant Parker printed the e-mail and placed a copy of it in Plaintiff's box at work to discuss the requested documents. Rather than contact Defendant Parker, Plaintiff sought the information of an individual he could contact in the training department. Rose Thomas, an employee in the Florence branch, provided copies of his training materials to him.[20] It was at this time that Plaintiff realized someone had signed his signature to the training materials while he was on vacation. He then sent an e-mail to Christina Thoesen on January 28, 2015, an employee in Human Resources alerting her to this issue and stating that this "created a hostile working environment for me" and that the actions violated a federal statute and the "Fair Labor Act."[21] Ms. Thoesen began investigating what happened with the training materials. It was during her investigation that she learned John Stroman had signed the documents on Plaintiff's behalf in order to move him to incentive pay so that he could make more money.[22] Defendant Stroman admitted to signing two graphs and initialing with Plaintiff's initials to indicate he watched a video. Defendant Parker testified that he was not aware nor did he instruct Defendant Stroman to engage in this behavior.[23]  According to Ms. Thoesen, Mr. Stroman was disciplined by Defendant Terminix as a result of this incident.[24]

Before Ms. Thoesen had the opportunity to contact Plaintiff, Plaintiff called her to verify

---

[20]Parker Dep. 189:1-5 [ECF# 34-4].

[21]Nowlin Dep. Defendant's Exhibit 6 [ECF #34-2, p. 80].

[22]Thoesen Dep. 41:1-11 [ECF# 34-7]; Stroman Dep: 40:15-17 [ECF# 34-3].

[23]Stroman Dep. 49:20-22 (November 3, 2016) [ECF# 34-3].

[24]Thoesen Dep. 41:10-11 [ECF# 34-7].

she received his January 28th email.[25] In that conversation, Ms. Thoesen testified that she thanked Plaintiff for bringing this to their attention and that she was investigating the matter. In response, she states that Plaintiff was angry and accusatory toward her.[26] When Ms. Thoesen asked Plaintiff what additional training he needed to complete prior to becoming a Keyman, he again stated that this incident created a hostile working environment.[27] Over the course of this day, Thoesen alleges that Plaintiff hung up the phone on her when she tried to discuss the matter. She bases this off of the fact that she states Plaintiff said "you have a good day" each time prior to hanging up the phone, and he did not attempt to call her back after any of these dropped calls.[28] By contrast, Plaintiff alleges that he received poor cell phone reception and the calls got dropped.[29] The following day, she and another employee traveled to Florence to speak with Plaintiff in order to figure out what additional training he needed to perform and to discuss the incident in person.[30] In discussing Plaintiff's complaints, he alleged that the comment from Jimmy Hewitt in 2013 about putting people in septic tanks, a comment from Jimmy Hewitt calling Plaintiff's brother a "bitch," the fact that in 2013 three black guys were taken off a job site and replaced by white guys who he felt did a poor job, and his concerns about his duties as a carpenter's assistant all

---

[25] Thoesen Dep. Plaintiff's Exhibit 20. [ECF# 34-7].

[26] Thoesen Dep. Plaintiff's Exhibit 20 [ECF #34-7].

[27] Thoesen Dep. 23 [ECF #34-7].

[28] Thoesen Dep. 66:13-21 [ECF #34-7].

[29] Nowlin Dep.229; 230:1-13 [ECF #34-2].

[30] Parker Dep. 210-211 [ECF #34-4].

contributed to a hostile work environment.[31] At this same meeting, Plaintiff and Ms. Thoesen also discussed the training he needed to complete for the Keyman position. Ms. Thoesen attempted to schedule a time for him to complete training, but Plaintiff would not commit to a date.[32] Later that day, after the meeting had concluded, Defendant Parker called Ms. Thoesen to let her know that Plaintiff stated he would not complete training until HR finished an investigation.[33] When Ms. Thoesen contacted Plaintiff to clear up any mis-communication, she stated that Plaintiff was abrupt, difficult to communicate with, and hung up the phone on her for the third time in the course of the investigation.[34] Defendant Terminix terminated Plaintiff as a result of his behavior during the investigation and the fact that he was "insubordinate" to his supervisors.[35] The decision to terminate was made by Defendant Parker and Human Resources.[36] On March 15, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, retaliation, and hostile work environment. [ECF #52, p. 14]. The EEOC issued a right to sue letter on November 13, 2015. Plaintiff filed his Complaint in this Court on February 2, 2016. [ECF #1].

---

[31] Thoesen Dep. Plaintiff's Exhibit 20 [ECF #34-7]; Parker Dep: 215-217 [ECF #34-4].

[32] Nowlin Dep. 227-228 [ECF #34-2].

[33] Parker Dep. 38 [ECF #34-4]; Thoesen Dep. 27-28 [ECF #34-7].

[34] Thoesen Dep. 27-28; 43 [ECF #34-7]; Parker Dep. 132 [ECF #34-4].

[35] Parker Dep. 36 [ECF #34-4]; Thoesen Dep. 27; 43 [ECF #34-7].

[36] Parker Dep. 36:1-4 [ECF #34-4].

<u>Discussion</u>

**I. R&R and Objections**

A review of Plaintiff's objections to the R&R reveals a general disagreement with the Magistrate Judge's recitation of the facts and an overall objection as to the finding that he did not substantiate his claims against Defendants. In its response, Defendants point out that Plaintiff's objections are not specific to the findings of the Magistrate Judge; rather, Plaintiff reiterates many, if not all, of the same arguments he raised in his initial brief. This Court agrees that rather than raising specific objections, Plaintiff again lists in numerical format his recitation of the facts and suggests that these facts "show a completely different story" than those set forth by the Magistrate Judge in the R&R. Plaintiff does object to the Court's finding that Plaintiff's retaliation claim must be dismissed because he asserts he offered a plausible reason for the alleged "insubordination" in that he explained why his phone had been disconnected. [ECF #53, p. 14]. With respect to the FLSA claims, Plaintiff again makes a general objection that "Defendant failed and refused to pay overtime" asserting that a three year statute of limitations applies. As to the state law claims, Plaintiff asserts simply that the dismissal of these claims will have a prejudicial effect on Plaintiff. [ECF #53, p. 15]. In the absence of specific objections, this Court reviews the R&R for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). While this Court in reviewing the R&R does not find clear error, this Court, in its discretion, has conducted a de novo review of Plaintiff's claims and now issues the following Order.

**II. Plaintiff's Title VII and § 1981 Claims (Counts One, Two, and Three)**

Plaintiff alleges that Defendant Terminix violated Title VII of the Civil Rights Act and 42

12

U.S.C. § 1981, by engaging in disparate treatment based on his race, retaliating in response to his complaints regarding this alleged treatment, creating a hostile work environment and wrongfully terminating him.  With respect to the different claims, the Magistrate Judge recommends the Court grant Defendants' Motion for Summary Judgment on the basis that Plaintiff has not established, either by direct evidence or under the *McDonnell Douglas*[37] burden shifting scheme, a *prima facie* case of race discrimination.  Further, the Magistrate Judge recommends finding that Plaintiff has not submitted sufficient evidence to demonstrate that the explanation provided by Defendant Terminix for its alleged treatment of Plaintiff was pretext, or otherwise provided evidence of a decision based on Plaintiff's membership in a protected class. The Magistrate Judge also recommends granting summary judgment to Defendants with respect to Plaintiff's allegations of a hostile work environment because under the Fourth Circuit's four factor approach to evaluate whether any alleged conduct was "severe or pervasive," Plaintiff cannot establish a genuine issue of material fact such that any claim based on a hostile work environment can survive the summary judgment stage. Plaintiff summarily objects to the dismissal of his Title VII claims.

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an individual with respect to his or her compensation, terms, conditions, or privileges, of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to establish a cause of action under Title VII, a plaintiff may either provide direct evidence or evidence sufficient to satisfy the burden-shifting scheme under *McDonnell Douglas*. Under the burden-shifting scheme

---

[37] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

announced in *McDonnell Douglas*, the three-step framework involved is that a plaintiff must first prove a *prima facie* case of discrimination by a preponderance of the evidence. *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If successful, then the defendant employer must present a legitimate, non-discriminatory reason for its employment action. *Id.* If the employer meets this burden, the presumption of unlawful discrimination established by a plaintiff "drops out of the picture" and the burden shifts back to the employee to show the reason given by his or her employer was pretext for discrimination. *Id.* Ultimately, the plaintiff bears the burden of proving the employer intentionally discriminated against him or her. *Id.* Section 1981 states, in relevant part, that "[a]ll persons . . . shall have the right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The standards that apply to lawsuits filed under this statute are the same as those standards applied to Title VII claims, with the same precedent being used to evaluate either claim. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (explaining that the *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination under this statute). Thus the analysis is the same under both federal statutes.

Plaintiff concedes that he does not have direct evidence of discrimination;[38] thus, the Magistrate Judge appropriately analyzed this case under the burden-shifting scheme. The Magistrate Judge first considered Plaintiff's evidence of a *prima facie* case of discrimination. Plaintiff's evidence includes his allegations that he was subjected to "disparate discipline" in that while he, as an African-American employee was terminated by Defendant Terminix for allegations

---

[38] In his response brief to the Motion for Summary Judgment, Plaintiff stated that he "does not have any direct evidence of race discrimination." [ECF #40, p. 31].

of insubordination, other white employees remained employed despite "inappropriate behavior" during the work day. The Magistrate Judge determined that this claim was akin to wrongful termination because Plaintiff appears to argue that he was terminated for alleged inappropriate behavior while other employees were not terminated for their behavior. [ECF #52, pp. 52]. In his objections, Plaintiff argues that the R&R "ignores" his allegations that he also alleged differential treatment in that he was paid less than other white employees, which he states he complained of in October of 2014 to his manager.

In order to establish a *prima facie* case of disparate treatment under Title VII, Plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his duties at a level that was satisfactory; and (4) he was treated differently from similarly situated employees outside of the protected class. *Scott v. Health Net Federal Services, LLC*, 463 Fed. Appx. 206, 208 (4th Cir. 2012). In response to Plaintiff's allegations of disparate treatment, Defendants argue that Plaintiff was not performing his duties at a satisfactorily level, and that even assuming there was an adverse employment action, he was not treated differently than similarly situated members outside the protected class. The Magistrate Court agreed with this analysis. First, with respect to differential treatment in pay, Plaintiff argues that the change reflecting his job title as "Carpenter's Assistant" after he discussed a pay increase proves differential treatment. Further, he argues that changing his position to "Keyman" so soon after he raised allegations of unequal pay based on his race proves disparate treatment. In viewing the facts in a light most favorable to Plaintiff this Court assumes Plaintiff has satisfied his initial burden of showing a *prima facie* case of discrimination because the adverse employment

action occurred close in time to the allegations of discrimination based on race. While temporal proximity alone does not establish sufficient facts upon which to create a *prima facie* case of discrimination, this Court finds that based on these facts, it could support Plaintiff's allegations. However, Defendant came forward with specific evidence that established a legitimate, non-discriminatory reason for the difference in Plaintiff's pay. This evidence included the fact that the other employees Plaintiff worked with had additional training and had been with the company for a longer period of time than Plaintiff. Moreover, at least one other employee had also been changed to a keyman position from a carpenter position upon returning to work after an injury. Plaintiff also testified to the fact that he had been doing work that was often performed by individuals in a keyman position. Plaintiff did not thereafter provide any evidence to suggest that Defendant's explanation was a "cover up" or pretext for a race discriminatory action. In fact, Plaintiff testified that he was not aware of the other employees' time with the company or their skills or training. He based his allegation that he was paid less due to race based on his information of what two other white individuals were making per hour.

In his objections, Plaintiff responds simply that the facts establish that the differential treatment was pretext, but he does not provide any specific argument regarding how the explanation for the differential treatment in pay was pretext. In reviewing the evidence in the light most favorable to Plaintiff, this Court finds that even assuming Plaintiff established a *prima facie* case of discrimination and setting aside the fact that Defendant explained that Plaintiff's work was not satisfactory, Plaintiff is still unable to rebut Defendant's reasons for the differential treatment in pay and show that it was mere pretext or otherwise rebut the reasons Defendant paid

certain individuals a higher amount per hour than Plaintiff. Similarly, Plaintiff's argument that Defendant's actions in transferring him from one position in the company to the position of keyman was race discrimination must also fail. Assuming that the transfer of a position was an "adverse employment action," a claim the Defendants deny, Plaintiff does not provide any facts to establish that he was treated differently than other similarly situated employees who were not a member of a protected class. Plaintiff's response to Defendant's explanation that they offered Plaintiff this new position because his current position was no longer needed and the keyman position actually afforded Plaintiff the opportunity to make more money was that he did not want that position because he did not want to have to sell items to customers that he felt they did not need.

Plaintiff also argues he was discriminated against in what amounts to a wrongful termination claim. In order to establish differential treatment in being wrongfully terminated, Plaintiff must show the following: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing at a level that met his employer's legitimate job expectations at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *Scott v. Health Net Federal Services, LLC*, 436 Fex. Appx. 206, 208 (4th Cir. 2012). Plaintiff's objection to the Magistrate Judge's analysis regarding his wrongful termination claim is simply that the Magistrate Judge did not view the facts in the light most favorable to Plaintiff. Again, even when this Court views the facts in a light most favorable to Plaintiff when he alleges that, unlike him, other employees who were white were not fired for insubordination, this Court agrees with the

Magistrate Judge that Plaintiff is unable to show that the Defendant's explanation regarding Plaintiff's termination was pretext. In his objections, Plaintiff argues that a white supervisor, Justin McKenzie, was not required to complete graphs and was not disciplined for failure to do his job. His evidence to support this assertion is his own, self-serving statements at his deposition. Similarly, Plaintiff again uses his own statements to support his contention that white men replaced three black men in a job. *See Baber v. Hosp. Corp. of Am.,* 977 F.2d 872, 874–75 (4th Cir. 1992) (noting that a plaintiff needs come forward with some evidence beyond mere conjecture or conclusory allegations to support his claims). Plaintiff has been unable to show that this explanation, that one crew was replaced for taking too long on a job, is pretext, other than asserting his own opinion that this was not true. For example, Plaintiff has not otherwise shown any other instances where a crew that was made up of members of a protected class was replaced by a white crew, or that the company was specifically "replacing" a working crew with an all-white crew. Finally, Plaintiff has not rebutted the evidence in the record that shows that after this action occurred, he was placed on another project and continued to be paid hourly. Thus, whether he actually suffered an adverse employment action or was treated in a disparate manner has been refuted by Defendant.

Finally Plaintiff argues that Jimmy Hewitt made the comment that "people like you we kill and put in septic tanks" but was not disciplined.[39] First, Plaintiff has not established that this conduct was similar to the continual insubordination pointed out by Defendant in making the decision to terminate Plaintiff. The testimony in the record reveals that upon Plaintiff bringing this

---

[39] Plaintiff acknowledges that this comment did not reference his race and that Mr. Hewitt never made a racial comment to him. [ECF #34-2, Nowlin Depo. 678: 4-10].

comment to the company's attention, the company took action in that it moved Plaintiff to perform his tasks away from Mr. Hewitt. Plaintiff acknowledges that this comment did not reference his race, nor did Mr. Hewitt ever make a racially derogatory comment toward him. Moreover, with respect to Plaintiff's conduct, Defendant Terminix argued that at the time the alleged adverse employment action happened (termination), Plaintiff had refused to cooperate with the investigation regarding the forgery of his signature and the attempts thereafter to help him complete his training. Beyond that, Defendants argue that his actions toward Ms. Thoesen, hanging up on her at least once, and as much as three times according to Defendant, led to the decision to terminate Plaintiff. This Court finds that Defendants provided a reasonable explanation as to any alleged differential treatment in termination. Plaintiff's response is simply that he stated he would not pursue any training until the investigation of the forged documents was complete. He does not otherwise refute that he gave conflicting answers on whether he had completed other portions of the training (completion of the graphs). Defendants and Plaintiff differ on whether Plaintiff hung up the phone on another employee three times; however, Plaintiff does not deny hanging up the phone at least once. With respect to the other phone calls, regardless of whether Plaintiff's cell phone cut out and he was unable to return a call, his opinion of his behavior does not suffice to create an issue of fact. Instead, it is the perception of the decision maker, here Defendant Terminix, and not the self-assessment of Plaintiff, which is relevant. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). Accordingly, even if this Court were to accept Plaintiff's allegations as true, Plaintiff has not provided sufficient evidence to rebut Defendant's reasonable explanation for terminating Plaintiff. Nor has Plaintiff provided sufficient evidence to

rebut Defendant's response regarding the alleged disparate discipline or treatment based on his race.

Plaintiff argues that his retaliation claim should not be dismissed. In his R&R, the Magistrate Judge recommends finding that Plaintiff did not establish a *prima facie* case of retaliation. This argument is similar to Plaintiff's disparate treatment in that he argues that Defendant retaliated against him for requesting a pay increase by transferring him to a keyman position. His objections to this claim are that (1) the Magistrate Judge relies on Defendant's representation that Mr. Hewitt and Mr. Teal had substantial experience in carpentry but fails to consider Plaintiff's "work" and "actual employment" and (2) that the Magistrate Judge accepted Defendant's view as to why Plaintiff was transferred while ignoring the fact that the transfer was "significant as it was an intentional act by the Defendant to decrease the Plaintiff's pay." Plaintiff states that there is no evidence in the record that the position would "actually" provide Plaintiff more money and Plaintiff did not want to do that job.

This Court does not find these objections persuasive. In order to establish a *prima facie* retaliation claim, an employee must show the following: (1) he was engaged in protected activity; (2) the employer took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Ross v. Communic. Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).[40] If the employer provides a legitimate, non-discriminatory reason for the purportedly retaliatory action, the plaintiff must then rebut this evidence by demonstrating that

---

[40] The United States Supreme Court has clarified that in the retaliation context, a less strenuous standard is applied to define an "adverse employment action." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006).

the employer's reason was pretext. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Here, the protected activity appears to be Plaintiff's complaints that he is being paid less than other white employees. The first alleged adverse employment action is the transfer to a new position with the company. Defendant refutes that this transfer meets the definition for an adverse employment action. While a less strenuous standard applies in this context, the action must produce some sort of injury or harm to the Plaintiff that a reasonable employee would have found to be adverse. *Id.* at 67-68.

Here, this Court agrees with the Magistrate Judge that Plaintiff has presented evidence to create a material issue of fact as to whether he suffered an adverse employment action because, as discussed earlier, it was close in time to his complaints of pay and a causal connection exists between complaints of pay and a job reassignment. In response, Defendant explained that the position Plaintiff was currently performing was being reduced due to low workload. Thus, the ability to accept his request for an increase in pay would be unlikely because that type of work was decreasing. In fact, Plaintiff states in his objections that there are currently no carpenter assistants employed at the Florence location. Second, Defendant states that the keyman position actually provided Plaintiff the opportunity to make more money. Plaintiff has not provided any evidence to refute Defendant's legitimate, nondiscriminatory explanation for the job reassignment. Defendant presented a legitimate, non-discriminatory reason for this employment action. Plaintiff has not presented sufficient evidence to create a genuine issue of material fact that this reason is pretext for retaliation. Plaintiff stated in his deposition that he would have to sell things to people he did not believe they needed, but this preference in performing a different job does not establish

he would suffer an injury or harm. Plaintiff also points out that he was given a quota of reinspections to complete that he felt others did not, however Defendant also explained that once Plaintiff brought that to their attention, they adjusted his quota.

Similarly, if Plaintiff's termination is viewed as a second alleged adverse employment action to support a retaliation claim, Defendant Terminix has provided a legitimate, non-discriminatory reason for his termination. Defendant stated that Plaintiff was terminated because of his insubordination, specifically his behavior toward Ms. Thoesen while she attempted to investigate the forgery matter. Ms. Thoesen honestly believed Plaintiff was being uncooperative and insubordinate during the investigation. Plaintiff has not rebutted this explanation by Ms. Thoesen, or refuted the fact that he had not actually completed his training. Thus, Plaintiff has failed to show that this reason was pretext such that his retaliation claim should proceed.

Finally, Plaintiff alleges in his Complaint that he suffered a hostile work environment, and that same allegation appears in the email he sent to Defendant regarding his discovery that his named had been forged on training documents.[41]  In reviewing a hostile work environment claim, this Court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, as opposed to a "mere offensive utterance" and whether it unreasonably interferes with an employee's work performance. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). It involves a showing of separate acts that collectively constitute an unlawful employment practice. *Id.* To survive summary judgment on a claim of a racially hostile work environment, a plaintiff must demonstrate facts that show conduct that is (1)

---

[41] The e-mail states, "I was off on vacation when my name was forged on the paperwork, and this has created a hostile working environment for me." [ECF #34-7, p. 59].

unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001). To the extent Plaintiff seeks to argue that he suffered from a hostile work environment, Plaintiff must establish facts that show the conduct is sufficiently severe or pervasive. To be "sufficiently severe or pervasive," a court must look to all circumstances to determine whether the environment was hostile or abusive. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000). Examples of this include the frequency of the alleged conduct, its severity, whether it is physically threatening or humiliating or instead a mere offensive utterance, and whether it unreasonably interferes with work performance. *Id.* Workplaces are not under a legal duty to purify the language of the office or workspace. *Carr v. Allison Gas Turbine Div., Gen. Motors, Corp.*, 32 F.3d 1007, 1010 (7th Cir. 1994). In short, hostile work environment claims are different in that they involve repeated conduct.

In his response brief, Plaintiff states simply that Defendant is not entitled to summary judgment as to this claim because he has presented facts showing that once it became apparent in December that Plaintiff was not going to quit, the Defendant created a hostile work environment. In his objections, Plaintiff argues that he made a hostile working environment complaint in his January e-mail, which he sent just days before his termination, and that he had also made a complaint in October of 2014. His proof of hostile work environment is thus that he complained of a hostile environment twice to his employer; once when he complained of a difference in pay and again in an e-mail where he discovered his name had been forged on training documents. This is the specific conduct Plaintiff points to regarding his hostile work

environment claim.

This Court does not find that Plaintiff's allegation that he complained of a hostile work environment in October of 2014 when he questioned his pay can support a claim for hostile work environment. As previously discussed in this Order, Plaintiff has not provided any facts to show that it was based on race, and in fact Defendant provided another position for him where he might have the potential to make more money in response to his request for an increase in pay. This Court has also considered the fact that Plaintiff alleges in an e-mail that the fact that his name was forged on training documents creates a "hostile work environment." However a review of the facts show that the forging of these documents initially created a situation where Plaintiff could continue working in a new position. Moreover, this was an isolated incident, and not sanctioned or known about by the employer or Plaintiff's supervisors at the time of the incident. Defendant then attempted to correct the problem by allowing Plaintiff time to complete the training so he could continue in that job position. Plaintiff learned of this forgery a few days prior to his termination, or several days before what he considers his resignation, thus he has not alleged any facts to prove that this conduct was pervasive. Simply put, Plaintiff has not produced a set of specific facts that establish unwelcome conduct based on race that was pervasive. In fact, Defendant has produced evidence to show that it sought to try and place Plaintiff in a new position, which does not support an abusive atmosphere, nor does it reflect severe or pervasive racially hostile conduct.

In its discretion, this Court has also considered the fact that Plaintiff alleges a comment made by Mr. Hewitt toward him was offensive, though Plaintiff conceded was not specific as to

his race. The action taken in response was that Plaintiff was placed on another assignment. In other words, Defendant attempted to alleviate any discomfort felt by Plaintiff. Accordingly, this Court finds that Plaintiff has failed to establish any material issue of fact to support a claim for hostile work environment. This Court agrees in reviewing these claims that Plaintiff's Title VII claims should be dismissed and the Defendants should be granted summary judgment as to these claims.

### III. Violation of the Fair Labor Standards Act (Count Ten)

In reviewing the FLSA claim, the Magistrate Judge considered Plaintiff's allegations that he was not properly paid overtime. Within the Complaint, he did not identify any specific time period when he was not paid overtime. Instead, in his response brief to the motion for summary judgment, he identified one week in February of 2012 and one week in April of 2012 where Defendant allegedly failed to pay him overtime wages. Under the FLSA, a two-year statute of limitations applies, unless an employee proves willfulness on the part of the employer. 29 U.S.C. § 255. If such a showing is made, a three year statute of limitations applies. 29 U.S.C. § 255. The Magistrate Judge first explained that because Plaintiff has not alleged willfulness, under the two year statute of limitations, the claims would be time-barred. However, even if these claims were not time barred, Defendant provided evidence in the form of testimony by Ms. Thoesen that some of the pay periods that Plaintiff questioned went over more than two weeks, thereby encompassing more than an eighty (80) hour work week. She thus sufficiently explains why a pay period may have more than eighty hours but still reflect regular pay. Plaintiff does not dispute this testimony. Instead, Plaintiff objects to the dismissal of his FLSA claims because he alleges

that he made a complaint about not being paid overtime in 2014. He further argues that because Defendant "failed and refused to pay overtime" the statute of limitations should be three years for these claims. First, within his objections, Plaintiff has failed to identify any specific workweek in which he worked over forty hours a week in 2014. Moreover, Plaintiff's allegation that Defendant failed and refused to pay overtime, even if true, does not establish a willful violation on the part of the Defendant. Defendant sufficiently explained its process for pay periods and why it believes it is not in violation of the FLSA. This Court cannot find any basis upon which to find that Plaintiff's unsupported assertions that his paychecks continually evidence a failure to pay overtime presents a genuine issue of material fact. Accordingly, Plaintiff's objection is overruled. This Court agrees that Plaintiff's FLSA claims should be dismissed as a matter of law.

### IV. State Law Claims (Counts Four, Five, Six, Seven, Eight, and Nine)

Finally, Plaintiff alleges several state law claims against Defendants, including slander, civil conspiracy, intentional infliction of emotional distress, two counts of third party interference with a contract against Defendants Parker and Stroman, and negligent supervision by Defendant Terminix. The Magistrate Judge recommends declining to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367. Plaintiff's objection is simply that the Court has "jurisdiction to exercise" and prejudice will otherwise result. This Court agrees with the Magistrate Judge that Plaintiff's federal claims should be dismissed. This Court also notes that Plaintiff noted that he would "release" his claims as to third party interference with a contract. After reviewing the remaining allegations, this Court declines to exercise supplemental jurisdiction over the remainder of the state law claims.

## Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits filed in this case. For the reasons stated above, this Court **ADOPTS** the Magistrate Judge's Report & Recommendation [ECF #52]. Defendant's motion for summary judgment [ECF #34] is **GRANTED**, and Plaintiff's Complaint is dismissed with prejudice as to the federal claims; however the state law claims are dismissed without prejudice. [ECF #1].

**IT IS SO ORDERED.**

Florence, South Carolina                                      s/ R. Bryan Harwell
March 28, 2018                                                R. Bryan Harwell
                                                             United States District Judge